# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

**Appeal from United States District Court, Southern District of Ohio, Eastern Division**

**Case No. 23-3341**
**Originating Case No. 2:20-cv-05935**

————————————————

**MARLEAN AMES,**
*Plaintiff-Appellant,*

v.

**STATE OF OHIO, DEPARTMENT OF YOUTH SERVICES,**
*Defendant-Appellee.*

————————————————

***ORAL ARGUMENT REQUESTED***

—————————————————————————————

**MERIT BRIEF OF PLAINTIFF-APPELLANT MARLEAN AMES**
**(Corrected Brief)**

—————————————————————————————

EDWARD L. GILBERT (0014544)
EDWARD L. GILBERT CO., L.P.A.
3070 W. Market Street, Suite 100
Akron, Ohio 44333
(330) 376-8855 Telephone
(330) 376-8857 Fax
egilbert@edwardlgilbert.com

*Counsel for Plaintiff-Appellant*
*Marlean Ames*

CATHLEEN BELLE CHRISSOS
SLATER (0066088)
DEVON J. ALEXANDER (0098814)
MEGAN ELIZABETH JEWETT
(0079534)
Ohio Attorney General's Office
Employment Law Section
30 East Broad Street, 16th Floor
Columbus, Ohio 443215
(614) 644-7257 Telephone
(614) 752-4677 Fax
ELSReview@OhioAGO.gov

*Counsel for Defendant-Appellee State of Ohio, Department of Youth Services*

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Federal Rule of Appellate Procedure and Sixth Circuit Rule 26.1, counsel for Plaintiff-Appellant Marlean Ames certifies that Plaintiff-Appellant is an individual and no party to this appeal is a subsidiary or affiliate of a publicly owned corporation and no publicly owned corporation that is not a party to this appeal has a financial interest in the outcome.

EDWARD L. GILBERT CO., L.P.A.

*/s/ Edward L. Gilbert*
Edward L. Gilbert (0014544)
3070 W. Market Street, Suite 100
Akron, Ohio 44333
(330) 376-8855 Telephone
(330) 376-8857 Fax
egilbert@edwardlgilbert.com
*Counsel for Plaintiff-Appellant Marlean Ames*

ii

# **TABLE OF CONTENTS**

CORPORATE DISCLOSURE STATEMENT ................................................. ii

TABLE OF CONTENTS ....................................................................... iii

TABLE OF AUTHORITIES ....................................................................v

STATEMENT IN SUPPORT OF ORAL ARGUMENT ............................... vii

STATEMENT OF JURISDICTION ............................................................. 1

STATEMENT OF ISSUES .......................................................................1

STATEMENT OF THE CASE ..................................................................... 2

STATEMENT OF FACTS ......................................................................... 5

    A. Ames's Exemplary Employment History ..................................... 5

    B. Ames Performed Well as PREAA; DYS's Claim that She Did Not Is Pretext............................................................................................ 7

    C. Despite Her Exemplary Job Performance, DYS Demoted Ames ........ 10

    D. DYS Replaced Ames With an Unqualifed 25-Year-Old Gay Male .... 11

    E. An LGBTIQ Supervisor Gave the Bureau Chief Position to an Unqualified LGBTIQ Employee Over Ames ................................. 12

    F. The EEOC Found Reasonable Cause of Discrimination .................... 13

SUMMARY OF ARGUMENT................................................................ 14

ARGUMENT...................................................................................... 15

    A. Standard of Review ................................................................. 15

    B. Framework – Indirect Discrimination Claims.................................. 15

    C. The District Court Erred in Granting DYS Summary Judgment on the Reverse Discrimination Claims. Ames Presented Sufficient Background Circumstances to Create a Triable Issue of Fact as to Whether DYS Took Adverse Action Against Her on Account of Her Heterosexuality: The Decisionmaker and the Promoted Employees Were Members of the Same Minority Group ................................... 17

    D. The District Court Erred in Granting DYS Summary Judgment on Ames's Demotion Claim. Ames Introduced Evidence to Create a Genuine Dispute of Material Fact Exposing DYS's Reasons as Pretext ................................................................................ 21

1. DYS's reason is false.................................................................. 22

2. DYS has changed the reason for demoting Ames ........................... 23

3. DYS utilized an irregular hiring process ........................................ 25

4. The replacement of Ames by Stojsavljevic is unreasonable and does not make sense ................................................................................ 26

CONCLUSION.................................................................................... 29

CERTIFICATE OF SERVICE ............................................................ 30

CERTIFICATE OF COMPLIANCE.................................................... 31

ADDENDUM ...................................................................................... 32

# TABLE OF AUTHORITIES

## Cases

*Aka v. Washington Hosp. Ctr.,* 156 F.3d 1284 (D.C. Cir. 1998) ................... 26

*Alexander v. CareSource,* 576 F.3d 551 (6th Cir. 2009)............................... 17

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S. Ct. 2505 (1986) ........ 15

*Bartoszek v. Delta College,* No. 21-11923, 2023 WL 3292873 (E.D. Mich. May 5, 2023).......................................................................................... 24

*Bender v. Hecht's Dept. Stores,* 455 F.3d 612 (6th Cir. 2006)....................... 28

*Bostock v. Clayton County,* 140 S. Ct. 1731, 207 L. Ed. 2d 218 (2020) ........ 16

*Briggs v. University of Cincinnati,* 11 F. 4th 498 (6th Cir. 2021)............. 16, 17

*Burton v. Freescale Semiconductor, Inc.,* 798 F.3d 222 (5th Cir. 2015) ........ 24

*Cicero v. Borg-Warner Auto., Inc.,* 280 F.3d 579 (6th Cir. 2002)............ 23, 24

*Fijalkowski v. Belmont County Bd. of Commrs.,* No. 2:17-cv-0195, 2021 WL 1964478 (S.D. Ohio May 17, 2021)........................................................ 21

*Gross v. FBL Fin. Servs., Inc.,* 557 U.S. 167, 129 S. CT. 2343 (2009).......... 23

*Hill v. Nicholson,* 383 Fed. Appx. 503 (6th Cir. 2010) ........................... 21, 25

*Jenkins v. Nashville Pub. Radio,* 106 Fed. Appx. 991 (6th Cir. 2004) .......... 25

*Levine v. DeJoy,* 64 F. 4th 789 (6th Cir. April 10, 2023) ............... 4, 14, 16, 28

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S. Ct. 1348 (1986) ..................................................................................... 15

*McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S. Ct. 1817 (1973) ........................................................................................ 14, 16, 20, 30

*Morris v. Family Dollars Stores of Ohio, Inc.,* 320 Fed. Appx. 330
(6th Cir. 2009) ........................................................................ 18, 20

*Murray v. Thistledown Racing Club, Inc.,* 770 F.2d 63 (6th Cir. 1985)......... 16

*White v. Baptist Memorial Health Care Corp.,* 699 F.3d 869 (6th Cir.
2012), *cert. denied*, 571 U.S. 886 (2013) ........................................ 15

*White v. Baxter Healthcare Corp.,* 533 F.3d 381 (6th Cir. 2008)............ 21, 26

*Zambetti v. Cuyahoga Community College,* 314 F.3d 249 (6th Cir. 2002)
........................................................................................ 18, 20

## **Statutes**

R.C. 124.11(D)(2) ..................................................................... 6

28 USC 1291 ............................................................................ 1

28 USC 1331 ............................................................................ 1

42 USC 2000e (Title VII of the Civit Rights Act of 1964) .......................... 1, 3

## **Rules**

Fed. R. Civ. P. 56(a) ................................................................. 15

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

Plaintiff-Appellant Marlean Ames ("Plaintiff-Appellant" or "Ames") requests the opportunity to present oral argument in support of her brief. Oral argument will assist the Court in reaching a fuller understanding of the issues involved. Oral argument would also allow the attorneys for both parties to address any outstanding factual or legal issues the Court deems relevant. Accordingly, Plaintiff-Appellant respectfully requests the Court set the case for oral argument.

## STATEMENT OF JURISDICTION

Subject matter jurisdiction arises under 28 USC 1331 as this case presents a federal question pursuant to Title VII of the Civil Rights Act of 1964, as amended, alleging sex discrimination and (reverse) sexual orientation discrimination.

Appellate jurisdiction is invoked under 28 USC 1291 as this is an appeal from the final judgment disposing of all claims. Specifically, on March 16, 2023, the United States District Court for the Southern District of Ohio ("District Court") entered summary judgment for Defendant-Appellee Ohio Department of Youth Services ("Defendant-Appellee" or "DYS"). (MSJ Order, R. 79, PageID# 2519.) Plaintiff-Appellant timely filed her appeal on April 13, 2023. (Notice of Appeal, R. 81, PageID# 2545.)

## STATEMENT OF ISSUES

1.　　Whether the District Court erred in holding that Ames did not present sufficient background circumstances to support her *prima facie* (reverse) sexual orientation discrimination claim where there was evidence that a member of the LGBTIQ[1] community promoted a member of the LGBTIQ community instead of Ames, and where the evidence established that Ames was subject to multiple adverse employment actions in a one-month period that benefitted LGBTIQ employees.

---

[1] Lesbian, Gay, Bisexual, Transgender, Intersex, and Questioning.

Case: 23-3341　　Document: 21　　Filed: 07/24/2023　　Page: 9

2.      Whether the District Court erred in holding that evidence showing DYS offered inconsistent reasons for demoting Ames, did not follow its usual hiring protocols, and that Ames was significantly better qualified for the PREAA position based on her education,  experience, and professional accomplishments did not create a genuine dispute of material fact as to whether DYS's proffered reason for demoting Ames and replacing her with a gay male was a pretext for sex discrimination.

## STATEMENT OF THE CASE

Ames, a twenty-year employee of DYS, was a victim to sex-based discrimination.  Ames was denied a promotion to Bureau Chief, a position given instead to a less qualified LGBTIQ female who did not even apply for the position or meet the minimum education requirements.  Ames was also demoted from a position she held for five years and for which she consistently earned positive evaluations, to be replaced by a less qualified 25-year-old male (also a member of the LGBTIQ community) who likewise did not even possess the minimum job qualifications.

Following these adverse actions, on August 21, 2019, Ames filed a charge of discrimination.  The Equal Employment Opportunity Commission ("EEOC") found reasonable cause to believe that Ames was discriminated against due to her sex (female and heterosexual) and issued a 90-day right to sue letter.  (Complaint Ex. 3,

R. 1-3, PageID# 16.)  On November 18, 2020, Ames timely filed a complaint with the District Court, which was later followed by a first amended complaint.  (First Amended Complaint, R. 28, PageID# 196.)  Ames asserted eight claims:  sex and sexual orientation discrimination under Title VII (Count 1); hostile work environment based on sexual orientation and age under Title VII (Count 2); retaliation under Title VII (Count 3); age discrimination under the ADEA (Count 4); Fourteenth Amendment due process rights under 42 USC 1983 (Count 5); age and gender discrimination under Ohio Rev. Code Chapter 4112 (Counts 6 and 7); and hostile work environment under Ohio Rev. Code Chapter 4112 (Count 8). (*See id.*)

DYS moved for partial judgment on the pleadings.  On March 29, 2022, the District Court granted the motion, dismissing with prejudice Count 4, and dismissing without prejudice Counts 2, 3, 5, 6, 7, and 8. (Opinion and Order - Judgment on the Pleadings, R. 50, PageID# 308.)

DYS subsequently moved for summary judgment as to the remaining claim (Count 1) for sex and (reverse) sexual orientation discrimination.  (MSJ, R. 71. PageID# 2349.)  The District Court granted DYS summary judgment.

- With respect to the (reverse) sexual orientation claim, the determinative issue was whether Ames presented background circumstances supporting the suspicion that DYS is that unusual employer who discriminates against the majority.  The District Court held Ames did not meet her burden.

3

- With respect to the sex discrimination claim, the determinative issue was whether Ames offered evidence to show DYS's reasons for its adverse actions were a pretext for discrimination. Ignoring that DYS offered inconsistent explanations for its decision to demote Ames, that Ames consistently received positive performance reviews, that the EEOC found probable cause of discrimination, and that DYS replaced Ames with a male who did not even meet the minimum qualifications for the position, the District Court found Ames was unable to show pretext.

Consistent with the Court's recent pronouncements in *Levine v. DeJoy*, 64 F.4th 789 (6th Cir. April 10, 2023), the Court should reverse the District Court's decision. A factfinder could legitimately infer that some other strong consideration, like discrimination, factored into the adverse employment decisions DYS took against Ames in favor of lesser-qualified individuals, particularly since DYS keeps changing the reason for its action and since the EEOC already found probable cause of discrimination. Accordingly, Ames requests that the Court reverse the District Court's judgment for DYS and remand the matter for a trial by jury on the sex discrimination claim and with instructions for the District Court to evaluate pretext on the (reverse) sexual orientation claim.

## STATEMENT OF FACTS

**A.    Ames Had an Exemplary Employment History.**

Ames is a female who identifies as heterosexual and is over forty years old.

Ames holds an associate degree in criminal justice technology and a Bachelor of

Science in postsecondary education, and she has pursued a master's in postsecondary

technical education.  (Deposition of Marlean Ames ("Ames Dep.") 20, 27, R. 62,

PageID# 997, 1004.)

Ames has worked for DYS since 2004. DYS is a state agency that oversees

the rehabilitation and confinement of juveniles in Ohio.

Ames enjoyed a successful career with DYS, receiving multiple promotions

throughout her twenty-year tenure.  DYS hired Ames initially as an executive

secretary in Akron, Ohio, and was soon transferred to the Indian River Juvenile

Corrections Facility in Massillon, Ohio.  (Ames Dep. 37, R. 62, PageID# 1014.)

There, Ames worked as an executive secretary for approximately four years.  (Ames

Dep. 38, R. 62, PageID# 1015.)

In 2009, DYS offered Ames a new assignment as an Administrative Assistant

3 and a working title of "Community Facility Liaison" in the Central Office in

Columbus, Ohio.[2]  (Ames Dep. 54, R. 62, PageID# 1031.)  Ames oversaw thirty-

_____

[2] The position title later changed from Administrative Assistant 3 to Program Administrator 2, but with no alteration to job responsibilities or pay grade.

nine detention facilities and all juvenile correctional facilities throughout Ohio. (Ames Dep. 74, R. 62, PageID# 1051.) The position required Ames to have a "thorough knowledge of management principles" to relieve "supervisor of a variety of difficult administrative duties" and to serve as the liaison with community facilities to ensure compliance with the Ohio Administrative Code and the Prison Rape Elimination Act ("PREA"). (Ames Dep. Ex. 6, R. 62-1, PageID# 1259.) Also important to the position, Ames provided PREA training to detention facility staff. (Ames Dep. 74, R. 62, PageID# 1051.) Ames worked in this role for five years and received positive reviews and salary raises.

In 2014, DYS posted a position for PREA Administrator ("PREAA"), which Ames applied for and received. (Ames Dep. 86-87, R. 62, PageID# 1063-64.) The PREAA position was unclassified, meaning Ames no longer enjoyed certain job protections such as "fallback rights"[3] and could be dismissed with or without cause. Despite this change in classification, Ames was still entitled to be free of discrimination in the workplace.

As PREAA, Ames initially reported to Wendy Faulkner, a "straight female." (Ames Dep. 94, R. 62, PageID# 1071.) In May of 2017, Ginine Trim ("Trim"),

---

[3] The "fallback right" allows a classified employee who is appointed to an unclassified position to retain the right to "fall back" to the most recently held classified position – that is, to "resume the position and status held . . . in the classified service immediately prior to [her] appointment to the position in the unclassified service" – if the unclassified position is revoked. Ohio Rev. Code 124.11(D)(2).

Deputy Director of the Division of Professional Standards and Chief Inspector in the Office of Quality and Improvement, became Ames's supervisor. (Deposition of Ginine Trim ("Trim Dep.") 26, R. 64, PageID# 1515.) Trim is a female who identifies as a member of the LGBTIQ community. (Ames Dep. 96, R. 62, PageID# 1073.) Trim reported to Julie Walburn ("Walburn"), the Assistant Director of DYS. (Trim Dep. 27, R. 64, PageID# 1516.)

As the only PREAA in the State of Ohio, Ames's job duties were substantial. Ames frequently visited facilities, provided walk-through assessments, and worked with facility directors to ensure PREA compliance. Ames indirectly supervised the PREA compliance managers ("PCM") throughout the state. Ames provided training, attended board meetings for the facilities, and wrote policy. (Ames Dep. 102-03, R. 62, PageID# 1079-80; *see also* R. 62-1 (position description).) Adding to her qualifications, in 2016, Ames became a certified Department of Justice PREA auditor, and in 2020, she became a federal contractor for conducting PREA audits. (Ames Dep. 30, R. 62, PageID# 1007.)

**B.    Ames Performed Well as PREAA; DYS's Claim that She Did Not Is Pretext.**

Ames received favorable performance evaluations, consistently meeting or exceeding expectations. Trim's evaluation of December 2018 – which Walburn approved just months before Ames's demotion – praised Ames for her customer

focus, which "exceeds expectations." (Trim Dep. Ex. 53, R. 64-1, PageID# 1647.) Trim wrote:

- "Marlean is always willing to assist others when needed. *** Marlean is customer focused and understands the importance of giving accurate and timely information to internal and external customers." (*Id.*)

- "Marlean does well coordinating and working with her peers, as well as facility staff to accomplish outcomes." (*Id.* at PageID# 1648.)

- "Marlean is very competent in her role as PREA Administrator." (*Id.*)

Importantly, even though the review occurred just months before the demotion, neither Trim nor anyone else told Ames DYS was looking to take PREA in a new direction – which is one of the after-the-fact justifications DYS belatedly offered for demoting Ames. (Ames Dep. 109, R. 62, PageID# 1085.) In fact, as part of Ames's evaluation, Trim remarked, "I look forward to watching [Marlean] grow and improve **over the upcoming year**." (Trim Dep. Ex. 53, R. 64-1, PageID# 1650, emphasis added.) And in truth, DYS was not taking PREA in a new direction. DYS Director Ryan Gies ("Gies") admitted the so-called "new direction" was not "new" at all:

> Q.     And I'm just wondering, was this a new vision that you were talking about?
>
> A.     No, not at all. It's a key part of the Prison Rape Elimination Act that you just not meet standards, but that you create policy and a culture that is going to prevent victimization. And it was clear that we had a challenging culture within our facilities that needed to be addressed, and we needed to have strong leadership and vision in that area, but, no, that was not new.

(Deposition of Ryan Gies ("Gies Dep.") 59-60, R. 59, PageID# 379-80.)

Furthermore, while DYS now complains about Ames's job performance, there is not a single document of anyone complaining about Ames's job performance or of issues voiced by community partners. (Gies Dep. 33, 37, agreeing he never discussed any performance issues with Ames, R. 59, PageID# 353, 357.) Ames was never disciplined or counseled. In all the years Ames prepared facilities for audit, there were never any deficiencies (which has not been the case since her demotion). (Ames Dep. 106, R. 62, PageID# 1083.) Ames was the "go to" person for questions about the PREA program, and Ames was always willing and able to help. (Deposition of Yolonda Frierson ("Frierson Dep.") 60, R. 63, PageID# 1375.)

Despite this evidence, the District Court instead focused on testimony from Gies that community partners complained Ames was difficult to work with. (MSJ Order, R. 79, PageID# 2539.) Not only is there no documentation – no emails, letters, notes, nothing – to validate such claims, Gies testified he fielded the complaints when **Ames was the community facilities monitor**. (Gies Dep. 45-46, R. 59, PageID# 365-66.) If these complaints did not stand in the way of Ames's

initial appointment to PREAA in 2014, it is hard to believe they were part of the reason for Ames's demotion years later in 2019.[4]

### C.     Despite Her Exemplary Job Performance, DYS Demoted Ames.

On May 6, 2019, Trim paid Ames a visit at her desk. After congratulating Ames for 30 years of public service, Trim suggested that Ames either retire or return to the Akron facility where she started her career with DYS. (Ames Dep. 141-43, R. 62, PageID# 1117-20.)

Days later, on May 10, 2019, Ames was told to report to a conference room where HR Bureau Chief Robin Gee ("Gee") and Walburn were waiting. (Ames Dep. 97, R. 62, PageID# 1074.) Walburn told Ames she was being removed as PREAA and had to sign a form exercising her fallback rights or else face termination. (*Id.*) Neither Walburn nor Gee gave Ames a reason for the adverse action; Walburn just said, "I'm not going to hash it out with you." (*Id.*) Ames left the room crying. Faced with a Hobson's choice of no job or a substantial demotion, Ames eventually signed the demotion paperwork. (Ames Dep. 99-100, R. 62, PageID# 1076-77.)

Ames's salary dropped from $47.22/hour to $28.40 (a drop from pay grade 14 to pay grade 10). (Ames Dep. Ex. 14, Interrogatory No. 3, R. 62-1, PageID# 1292.) DYS has not identified any other employee who has suffered a similar decrease in

---

[4] Walburn similarly claimed at deposition to have had ongoing concerns about Ames's performance as PREAA. This testimony is contradicted by Walburn's approval of Ames's positive performance evaluations, including 2019. *See* Trim Dep. Ex. 53, R. 64-1, PageID# 1647.)

pay. (*See* Ames Dep. Ex. 14, Interrogatory Nos. 6, 9, R. 62-1, PageID# 1294-96; Gies Dep. 108, R. 59, PageID# 428.) In fact, DYS is known to create positions for employees. For example, Jeff Spears, a member of the LGBTIQ community, was removed from his position as regional administrator after he was accused of sexual harassment. DYS created a new position for him at the central office. (Ames Dep. 110-11, 114, R. 62, PageID# 1087-88, 1091; *see also* Ames Dep. Ex. 14, Interrogatory Nos. 6, 9, R. 62-1, PageID# 1294-96.) Also, DYS cannot explain why it did not consider Ames for other positions that would have resulted in a smaller pay reduction, even though it has done so for other employees. (Gies Dep. 70, R. 59, PageID# 390.)

### D. DYS Replaced Ames with an Unqualified 25-Year-Old Gay Male.

On May 13, 2019, DYS gave the PREAA job to Alexander Stojsavljevic ("Stojsavljevic"), a 25-year-old male who identifies as a member of the LGBTIQ community. Contrary to DYS procedure and past practice (including the procedure it followed when it appointed Ames to the PREAA position in 2014), DYS did not post the position opening. Walburn and Gies simply offered it to Stojsavljevic – no interview, no questions, not even an application. (Gies Dep. Ex. 31, "Selection and Promotion of Personnel," R. 69-1, Page ID# 2344; *see also* Ames Dep. 86-87, R. 62, PageID# 1063-64.)

While DYS has attempted to portray Stojsavljevic as infinitely qualified for the PREAA position, the facts do not bear this out. Stojsavljevic joined DYS on May 1, 2017 as a social worker.[5] (Frierson Dep. 62, R. 63, PageID# 1377.) A few months later, DYS promoted Stojsavljevic to PCM.　Because Stojsavljevic was still on probationary status, he was not eligible for the promotion. To circumvent this obstacle, DYS had Stojsavljevic resign his current position and DYS rehired Stojsavljevic as PCM the next day. (Stojsavljevic Dep. 46-47, R. 61, PageID# 1839-40.) As PREAA, Ames trained and indirectly supervised Stojsavljevic in his PCM position. (Stojsavljevic Dep. 63, R. 61, PageID# 1856.)

### E.    An LGBTIQ Supervisor Gave the Bureau Chief Position to an Unqualified LGBTIQ Employee Over Ames.

The demotion was not the only instance of discrimination Ames faced.　In April 2019, Ames applied for the position of Bureau Chief of the Quality Assurance Department. (Ames Dep. 116-17, R. 62, PageID# 1093-94.) Despite being qualified and fulfilling the application requirements, DYS did not hire Ames, opting instead for Yolonda Frierson ("Frierson"). Frierson, a member of the LGBTIQ community who did not hold an undergraduate degree at the time, neither applied for the position

---

[5] Stojsavljevic did not bring much experience to DYS. He graduated from the University of Akron in 2015, and he earned his social worker license in 2016.　Before joining DYS, Stojsavljevic worked as a security guard for Cleveland Clinic. (Stojsavljevic Dep. 32, R. 61, PageID# 1825.) In defending the charge of discrimination, DYS told the EEOC that Stojsavljevic worked four years in the private sector as a social worker before joining DYS.　As Stojsavljevic did not earn his license until 2016, this is not possible and yet another example of the false bases underlying DYS's decisions.

when it was originally posted nor satisfied the minimum job qualifications. (Frierson Dep. 77, 83-84, R. 63, PageID# 1392, 1398-99; Frierson Dep. Ex. 51, R. 63-1, PageID# 1487-89.)   In fact, Frierson, who misrepresented her education on her resume, did not satisfy the job requirements for most of the positions she held at DYS.  (Frierson Dep. 82, 89, R. 63, PageID# 1397, 1404.)  Even so, in December 2019, Trim approached Frierson and said, "I would like for you to serve in this position [Bureau Chief]."  (Frierson Dep. 76, R. 63, PageID# 1391.) Internally, DYS needed to do some maneuvering because Frierson did not meet the minimum job qualifications.  (Frierson Dep. 97, R. 63, PageID# 1412.)

### F.    The EEOC Found Reasonable Cause of Discrimination.

Ames filed a charge of discrimination with the EEOC.   Following its investigation, the EEOC found reasonable cause of discrimination.   (EEOC Determination, R. 1-1, PageID# 13-14.) Significantly, in defending the charge, **DYS did not offer a reason for demoting Ames, other than to say it "elected to revoke [Ames's] unclassified appointment" because it could**.  (DYS Position Statement, R. 64-1, PageID# 1691.) DYS did not criticize Ames's job performance or say Ames was ineffective.  (*Id.*, PageID# 1687-92.)  DYS did not mention any desire to take the PREAA position in a new direction.  (*Id.*)  DYS did not mention any complaints from community partners – complaints that seemingly came out of nowhere during the District Court proceedings as an ad hoc excuse to justify its actions. (*Id.*)  DYS's

shifting explanations are precisely the kind of facts that make the issue of pretext a question for the jury and make summary judgment inappropriate.

## <u>SUMMARY OF ARGUMENT</u>

The District Court erred in granting summary judgment to DYS. First, Ames presented sufficient background circumstances to create a triable issue of fact as to whether DYS took adverse action against her on account of her heterosexuality: The decisionmaker and the promoted employees were members of the same minority group (the LGBTIQ community). Under the "single factor" rule, this evidence is enough to state a *prima facie* case. Consequently, the District Court should have proceeded to analyze the remaining steps under the *McDonnell Douglas* framework.

Second, a triable issue of fact exists as to whether DYS's stated reasons for its actions were a pretext, which is precisely what the EEOC decided. DYS has not presented a consistent rationale for demoting Ames. Director Gies admitted that the supposed "new direction" was not "new" at all. DYS did not follow its usual hiring protocols. Ames submitted evidence demonstrating that she was significantly more qualified for the PREAA position based on her education, experience, and professional accomplishments. Consistent with the Court's recent *Levine* decision, upon construing the facts in the light most favorable to Ames, as is required on summary judgment, this evidence is sufficient to create disputed material issues of fact as to the reasonableness of DYS's decision to demote Ames and to replace her

with a male. Accordingly, the District Court's decision granting DYS summary judgment should be reversed.

## ARGUMENT

### A.    Standard of Review

The Court's review of the District Court's order granting summary judgment is *de novo*. *White v. Baptist Memorial Health Care Corp.,* 699 F.3d 869, 873 (6th Cir. 2012), *cert. denied,* 571 U.S. 886 (2013). Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). No genuine issue of material fact exists when the record "taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348 (1986). Ultimately, the court evaluates "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52, 106 S. Ct. 2505 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255, 106 S. Ct. at 2513.

### B.    Framework - Indirect Discrimination Claims

Ames has alleged two instances of discrimination on account of her sex (female) and sexual orientation (heterosexual): first, the failure to promote her to

Bureau Chief; and second, the decision to demote her as PREAA. *Bostock v. Clayton County*, 140 S. Ct. 1731, 1743 (2020) (affirming that discrimination on account of sexual orientation or gender identity is "in part because of sex").

Ames acknowledges that the record contains no direct evidence of discrimination, and accordingly, her claims are subject to the tripartite burden-shifting framework announced by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973). Under this framework, Ames must first establish a *prima facie* case of disparate treatment. *Levine*, 64 F.4th at 797. This requires the plaintiff to demonstrate that (1) she was a member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for the position; and (4) she was replaced by someone outside the protected class or was treated differently than similarly situated non-protected employees. *Briggs v. University of Cincinnati*, 11 F.4th 498, 508 (6th Cir. 2021). Where the plaintiff is a member of a majority group (and hence alleging "reverse discrimination" as Ames has done with respect to her sexual orientation claim), the plaintiff bears an additional burden to show that "background circumstances support the suspicion that the defendant is that unusual employer who discriminates against the majority" to satisfy the first prong of the *prima facie* case. *Murray v. Thistledown Racing Club, Inc.,* 770 F.2d 63, 67 (6th Cir. 1985).

If the plaintiff succeeds in presenting a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse action. *Briggs,* 11 F.4th at 508. Should the defendant carry that burden, the plaintiff must then show that the legitimate reason offered by the defendant was not its true reason but was a pretext for discrimination. *Id.*

Also, while not determinative, an EEOC finding of probable cause "ought to be considered for the factual material it contains to determine if a fact question is raised." *Alexander v. CareSource*, 576 F.3d 551, 562 (6th Cir. 2009). After all, the EEOC is one factfinder that has determined it probable that DYS discriminated against Ames because of her sex and sexual orientation.

C.　**The District Court Erred in Granting DYS Summary Judgment on the Reverse Discrimination Claim. Ames Presented Sufficient Background Circumstances to Create a Triable Issue of Fact as to Whether DYS Took Adverse Action Against Her on Account of Her Heterosexuality: The Decisionmaker and the Promoted Employees Were Members of the Same Minority Group.**

With respect to her (reverse) sexual orientation claim, the District Court erroneously concluded that Ames did not point to sufficient "background circumstances" manifesting DYS's intent to discriminate against the majority. This

conclusion is inconsistent with the facts when construed in the light most favorable to Ames.[6]

This Court has held that a plaintiff can demonstrate background circumstances by showing simply that the employer was a member of the same minority group as the employee promoted. Thus, for example, evidence that a Hispanic manager replaced a white employee with a Hispanic employee was sufficient to establish the first prong of a reverse discrimination case. *Morris v. Family Dollar Stores of Ohio, Inc.,* 320 Fed. Appx. 330, 340 (6th Cir. 2009); *see also Zambetti v. Cuyahoga Community College*, 314 F.3d 249, 257 (6th Cir. 2002) (relying on the single factor that the police chief was African American and promoted an African American).

Ames provided the requisite background circumstances by showing that Trim is a member of the LGBTIQ community and that she awarded the Bureau Chief position to Frierson, who is also a member of the LGBTIQ community. While that evidence is sufficient in itself, Ames also provided evidence that following her demotion, DYS replaced her with another member of the LGBTIQ community (Stojsavljevic).

---

[6] DYS acknowledged and the District Court found that Ames established her *prima facie* case with respect to her sex-based claim, i.e., that DYS discriminated against Ames because she is female. (MSJ Order, R. 79, PageID# 2538.)

The District Court, however, ignored evidence that Trim promoted Frierson, instead finding "the undisputed evidence in this case is that Walburn and Gies, both of whom Ames believes are heterosexual, made the decision not to promote her and to select Frierson instead." (MSJ Order, R. 79, PageID# 2535.) This is not so. In responding to EEOC inquiries, DYS squarely placed the decisions on Trim. Trim was the person "authorized to fill a Bureau Chief position to oversee the following areas: Policy, PREA, Internal Audits, PbS, OYAS and Research." (Trim Dep. Ex. 54, R. 64-1, PageID# 1683.) "Ms. Trim opted to re-visit the need for a Bureau Chief and placed Ms. Yolonda Frierson into a Temporary Working Level as of 12/19/19 in order to maintain continuity in the division during her absence. ***Ms. Trim permanently promoted Ms. Frierson to the position of Bureau Chief*** on 1/19/2020." (*Id.,* emphasis added.) The District Court erred by discounting this evidence in favor of DYS. Instead, when construed in the light most favorable to Ames, these facts satisfy Ames's threshold burden.

The District Court additionally erred in holding that evidence of two adverse employment decisions in a one-month time span that benefitted members of the minority group is insufficient to satisfy the "background circumstance" requirement. Instead, the District Court suggested "two data points are not enough to establish a pattern," and that at least three data points are required. The District Court, citing a line from GOLDFINGER wrote, "Mr. Bond, they have a saying in Chicago: 'Once is

happenstance. Twice is coincidence. The third time, it's enemy action'." (MSJ Order, R. 79, PageID# 2536.) Yet, there is no hard fast rule that requires a reverse discrimination plaintiff to show at least three incidents of adverse action to state a *prima facie* case. Indeed, as the Court recognized in *Morris* and *Zambetti,* a single factor is enough.

Here, there is more than a single factor. There is evidence that Trim declined to promote Ames in favor of an unqualified LGBTIQ employee. There is also evidence that Ames was removed from her PREAA position and immediately replaced by an unqualified LGBTIQ employee. A trier of fact could conclude that these acts – both taken in a one-month period – are more than a "coincidence" and support the suspicion that DYS is that unusual employer who discriminates against the majority. Accordingly, the District Court erred in finding as a matter of law that Ames did not establish a *prima facie* case of reverse discrimination on account of her sexual orientation.[7] The decision should be reversed, with instructions for the District Court to address the remaining steps of the *McDonnell Douglas* framework.

---

[7] Because it ruled that Ames did not establish her *prima facie* case with respect to her (reverse) sexual orientation failure to promote claim, the District Court did not evaluate the remaining steps under *McDonnell Douglas,* to wit, legitimate business justification and pretext. Ames maintains that triable issues of fact exist as to whether Frierson was the superior candidate. The objective evidence shows Ames in comparison with Frierson had a superior education, more years of experience within DYS, and more working knowledge of DYS operations. Indeed, it was Ames to whom Frierson often turned with questions concerning the PREA.

**D.     The District Court Erred in Granting DYS Summary Judgment on Ames's Demotion Claim.  Ames Introduced Evidence to Create a Genuine Dispute of Material Fact Exposing DYS's Reasons as Pretext.**

As Ames met her initial burden with respect to her claim that DYS demoted her on account of her sex, DYS was tasked with rebutting the presumption of discrimination by articulating a legitimate, non-discriminatory reason for its employment decisions.   DYS asserted that it demoted Ames because it was (supposedly) moving in a new direction and Ames was not the right fit.  Thus, the burden returned to Ames to identify facts from which a reasonable jury could find DYS's proffered reason pretextual. Ames introduced evidence to create a genuine dispute of material fact exposing DYS's reasons as pretext, and accordingly, the District Court erred in granting DYS summary judgment.

A plaintiff often shows pretext by providing evidence that the employer's reason for acting was not based in fact, did not actually motivate the employer's action, or was not sufficient to motivate the employer's action. *Hill v. Nicholson*, 383 Fed. Appx. 503, 513 (6th Cir. 2010). Similarly, pretext may be established by showing that the employer's decision was unreasonable. *Id.*; *White v. Baxter Healthcare Corp.,* 533 F.3d 381, 393 (6th Cir. 2008).  A plaintiff, however, need not follow these categories rigidly because a plaintiff is "free to try to show pretext in whatever way they see fit." *Fijalkowski v. Belmont County Bd. of Commrs.,* No. 2:17-cv-0195, 2021 WL 1964478, *7 (S.D. Ohio May 17, 2021).

Here, Ames offered multiple indicators from which a factfinder could legitimately infer that some other strong consideration, like discrimination, factored into the adverse employment decisions DYS took against Ames in favor of a lesser-qualified individual: DYS's reason had no basis in fact, DYS offered differing explanations for demoting Ames, DYS did not follow its usual hiring practices, and DYS's decision was plainly unreasonable in light of Ames's superior training, background, education, and experience. These facts along with the EEOC's determination of reasonable cause cast doubt on DYS's business justification and present a question of fact on the issue of pretext.

### 1.    DYS's reason is false.

The District Court found no pretext, largely adopting DYS's claim that Gies and Walburn made a reasonably informed decision to demote Ames because of alleged issues with Ames's work performance and the so-called "new direction" they wanted to take the PREA program. (*See* MSJ Order 21, R. 79, PageID# 2539.) But Ames offered evidence exposing these justifications as having no basis in fact.

The undocumented performance issues – which involved complaints that Ames did not work well with a handful of community partners - came to Gies's attention long before Ames was promoted to PREAA.[8] Moreover, these complaints

---

[8] The District Court was quick to dismiss the favorable performance evaluations Gies gave Ames in 2011-2013, noting that work product and skills can change over time. (MSJ Order 22, R. 79,

contradict Ames's December 2018 performance evaluation – approved by Walburn on January 9, 2019 – which gave Ames high praise for her ability to work well with community facility staff. (Trim Dep. Ex. 53, R. 64-1, PageID# 1669.) These positive statements regarding Ames's job performance could allow a jury to find DYS's proffered reason had no basis in fact or that it was insufficient to motivate her demotion. *See Cicero v. Borg-Warner Auto., Inc.,* 280 F.3d 579, 592 (6th Cir. 2002), *overruled on other grounds, Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 n.4, 129 S. Ct. 2343 (2009).

The "new direction" excuse is also suspect. It was not until this litigation ensued that DYS mentioned a "new direction." Moreover, Gies exposed the deception of the claim during his deposition. When questioned for details about the supposed "new direction" and whether "this was a new vision," Gies stated there was no new direction, "No, not at all." (Gies Dep. 59-60, R. 59, PageID# 379-80.) This testimony could certainly allow a jury to question the veracity of DYS's claimed justification for demoting Ames.

### 2.    DYS has changed the reason for demoting Ames.

An employer's reason for the adverse action is suspect when it has not remained the same. This Court has explained, "Shifting justifications over time calls

---

PageID# 2540.) If old compliments are of no consequence, then the same should be said for old complaints.

the credibility of those justifications into question." *Cicero,* 280 F.3d at 592; *see also Burton v. Freescale Semiconductor, Inc.,* 798 F.3d 222, 237 (5th Cir. 2015) ("A jury may view erroneous statements in [an] EEOC position statement as circumstantial evidence of discrimination. We have also found an employer's rational 'suspect' where it had not remained the same between the time of the EEOC's investigation and the ultimate litigation"). Thus, for example, in *Bartoszek v. Delta College,* No. 21-11923, 2023 WL 3292873 (E.D. Mich. May 5, 2023), the employer's failure to present a consistent rationale for the adverse action – it gave the EEOC one explanation, and then the district court another – was enough to cast doubt on the veracity of the employer's reason and present a question of fact on the issue of pretext. *Id.* at *4-5.

DYS's reason for demoting Ames has changed over time. DYS initially did not provide any reason for the demotion after Ames inquired. In its EEOC statement, DYS simply stated it demoted Ames because the PREAA position was an unclassified position, and it could revoke the assignment at any time. But then, in its summary judgment brief, DYS changed course and claimed Ames was not the right fit for the new direction it wanted to take the PREA program, and it went so far as to dig up supposed complaints about Ames made before DYS promoted Ames to PREAA. Contrast this to the fact that just a few months before demoting Ames, Trim gave Ames a favorable performance evaluation (approved by Walburn) stating,

"Marlean is very competent in her role as PREA Administrator," "is always willing to assist others," "is customer focused," and "works well with her peers as well as facility staff." (Trim Dep. Ex. 53, R. 64-1, PageID# 1647.) To this end, Trim (and by acknowledgment Walburn), "look[ed] forward to watching [Marlean] grow and improve *over the upcoming year*." (*Id.,* emphasis added.) Not to mention, no one ever told Ames DYS was looking to take PREA in a new direction, or even communicated the reason for the demotion. (Ames Dep. 109, R. 62, PageID# 1085.) *See Hill*, 383 Fed. Appx. at 514 (noting that a jury might find it relevant that the non-discriminatory explanation given by the employer was never actually communicated to the employee). Reasonable employers do not give an employee a positive job evaluation and then fire them a few months later claiming they are not the right fit.

### 3. DYS utilized an irregular hiring process.

"Evidence of irregularities in the application and selection process" can raise a genuine issue of pretext when combined with other indicators of discriminatory motivation. *Jenkins v. Nashville Pub. Radio*, 106 Fed. Appx. 991, 995 (6th Cir. 2004) (irregularities constitute a factor toward a finding of pretext but are not alone dispositive). DYS did not follow its usual practices when it promoted Stojsavljevic. DYS did not post the position. Stojsavljevic did not apply for the position. Stojsavljevic did not even possess the qualifications for the position. While DYS claimed it can do what it wants when it comes to unclassified appointments, the

evidence viewed in the light most favorable to Ames shows that DYS's customary practice is to post positions (whether classified or unclassified), accept applications, and interview candidates. That is the process DYS followed when it promoted Ames to PREAA, but that is not the process DYS followed when it promoted Frierson or Stojsavljevic (both members of the LGBTIQ community). That DYS ditched this customary practice after demoting Ames indicates an improper underlying motivation.

### 4. The replacement of Ames by Stojsavljevic does not make sense.

In *White v. Baxter Healthcare Corp.,* 533 F.3d 381 (6th Cir. 2008), the Court recognized that the plaintiff's "arguably superior qualifications" for a position, in and of itself, could lead a jury to doubt the justifications given for the defendant's employment decision. At a minimum, arguably superior qualifications "create a genuine issue of material fact concerning the reasonableness of [the defendant's] decision." *Id.* at 394.

> If a factfinder can conclude that a reasonable employer would have found the plaintiff to be significantly better qualified for the job, but this employer did not, the factfinder can legitimately infer that the employer consciously selected a less-qualified candidate - something employers do not usually do, unless some other strong consideration, such as discrimination, enters into the picture.

*Id.* at 393-94, citing *Aka v. Washington Hosp. Ctr.,* 156 F.3d 1284, 1294 (D.C. Cir. 1998). Like *White*, this case involves similar distinctions between the relevant

employees, which are more than sufficient to create a genuine issue of material fact and render summary judgment improper.

DYS claims it replaced Ames with Stojsavljevic because of his superior qualifications and firm grasp of the so-called new direction DYS envisioned for the PREA program. The facts do not add up to support DYS. There is no denying Ames was supremely qualified over Stojsavljevic. In contrast to Ames's 30 years of public service, five years of on-the-job work as PREAA, an associate degree in criminal justice, a bachelors in postsecondary education, graduate coursework, and PREA certification, Stojsavljevic had next to no education, training, or experience. Stojsavljevic was a young, inexperienced employee, having only graduated from college in 2015. In May 2019, he had been with DYS for less than two years. He held only an undergraduate degree, had not pursued any masters coursework, and did not hold any PREA certifications. Stojsavljevic, as PCM, was indirectly supervised by Ames, and he looked to Ames for instruction and assistance.

On the other hand, Ames had been with DYS for twenty years, during which time she worked in several different offices and had interacted with various DYS departments and facilities. Ames's educational background is far more extensive and includes PREA-specific certification. Ames had years of on-the-job PREA training, having served as a facility liaison for five years and as the PREAA for four

years. Comparing Ames's qualifications against Stojsavljevic is not even a close call.[9]

In *Levine v DeJoy*, 64 F. 4th 789 (6th Cir. 2023), the Court recently addressed a similar situation where the adversely affected employee was far more qualified than the employee who received the promotion. The Court astutely refused to accept at face value the employer's subjectively based explanation that the less qualified employee "interviewed better." This is because subjective perceptions like someone "interviewed better" or "was a better fit" are easily susceptible to manipulation to mask the employer's true reason for its decision. *Id.* at 800. When one employee is more qualified than the other, but suffers adverse action, the jury, not the court, should decide the issue of pretext:

> Accordingly, we hold that [plaintiff] met her burden of producing enough evidence to convince a reasonable jury that [employer's] proffered reasons for not promoting [plaintiff] may have been a mere pretext for racial discrimination, and thus, [employer] is not entitled to summary judgment. *** In other words, [plaintiff] has produced evidence of her relative qualifications that is "of sufficient significance ... to call into question the honesty of [employer's] explanation."

*Id.* at 802-03, quoting *Bender v. Hecht's Dept. Stores,* 455 F.3d 612, 627 (6th Cir. 2006).

_____

[9] DYS downplays this huge disparity by insisting Gies and Walburn did not have Stojsavljevic in mind as Ames's replacement when they demoted her. A reasonable factfinder exercising common sense could easily see through this ruse. Gies and Walburn supposedly had lengthy discussions on the so-called "new direction" they wanted to take the PREA program. It defies credulity that they fired Ames without having a replacement in mind, particularly when it took them mere days to offer Stojsavljevic the job.

Likewise, the disparities between the qualifications of Ames over Stojsavljevic are of sufficient significance to call DYS's explanation into question. DYS's claim that Ames was not the "right fit" for its so-called "new direction" is subjectively driven and must be scrutinized. All told, Ames provided evidence of irregularities in the application and selection process, inconsistencies in the reasons DYS gave for demoting Ames as well as evidence of Ames's superior qualifications and the EEOC finding of reasonable cause, which if believed by the finder of fact, could lead to the conclusion that DYS demoted Ames and replaced her with a gay male because of her sex. Genuine issues concerning pretext exist, and summary judgment should have been denied.

## **CONCLUSION**

When viewing the facts and their reasonable inferences in the light most favorable to Ames, the Court cannot rule out the possibility that a rational trier of fact could conclude that DYS is the unusual employer who discriminates against the majority and that impermissible factors motivated DYS's decision to demote Ames from PREAA.

WHEREFORE, Plaintiff-Appellant Marlean Ames respectfully submits that summary judgment was inappropriate, and the District Court's decision should be reversed, with instructions for the District Court to evaluate the pretext step of the

*McDonnell Douglas* framework as to the failure to promote claim and with instructions to permit Ames to present her demotion claim to the jury.

Respectfully submitted,

EDWARD L. GILBERT CO., L.P.A.

*/s/ Edward L. Gilbert*
Edward L. Gilbert (0014544)
3070 W. Market Street, Suite 100
Akron, Ohio 44333
(330) 376-8855 Telephone
(330) 376-8857 Fax
egilbert@edwardlgilbert.com
*Counsel for Plaintiff-Appellant Marlean Ames*

**CERTIFICATE OF SERVICE**

I certify that on this 24TH day of July, 2023, the foregoing *Merit Brief of Plaintiff-Appellant Marlean Ames (Corrected Brief)* was electronically filed with the Court and will be accessible to all parties through the Court's electronic filing system.

*/s/ Edward L. Gilbert*
Edward L. Gilbert (0014544)
EDWARD L. GILBERT CO., L.P.A.
*Counsel for Plaintiff-Appellant Marlean Ames*

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that this Merit Brief (Corrected Brief) complies with the word-count provision set forth in the Federal Rule of Appellate Procedures 38(a)(10) and 32(g)(2). This Merit Brief (Corrected Brief) is printed using Times New Roman 14-point typeface using Microsoft word processing software and contains 6,928 words.

<u>/s/Edward L. Gilbert</u>
Edward L. Gilbert (0014544)
EDWARD L. GILBERT CO., L.P.A.
*Counsel for Plaintiff-Appellant Marlean Ames*

**ADDENDUM-**
**DESIGNATION OF RELEVANT ORIGINATING COURT DOCUMENTS**

| Description of Document | Docket Entry | PageID Range |
|---|---|---|
| Complaint | 1 | 1-12 |
|   - Exhibit 1 – EEOC Determination | 1-1 | 13-14 |
|   - Exhibit 3 – Right to Sue | 1-3 | 16-18 |
| First Amended Complaint | 28 | 196-207 |
| 3/29/22 Opinion and Order re Motion for Judgment on the Pleadings | 50 | 295-308 |
| Deposition of Ryan Gies *Amended Document filed as R.68* | 59 | 321-453 *with emphasis on 353-366, 379-380, 390, 428* |
| Deposition of Alexander Stojsavljevic *Amended Document filed as R.69* | 61 | 703-810 *with emphasis on 1825-1840, 1856* |
| Deposition of Marlean Ames | 62 | 977-1250 |
|   - Exhibit 6 (Position Description) | 62-1 | 1259 |
|   - Exhibit 14 (Interrogatory Answers) | 62-1 | 1286-1304 |
| Deposition of Yolonda Frierson | 63 | 1316-1458 *with emphasis on 1375-1377, 1391-1399, 1412* |
|   - Exhibit 51 (Bureau Chief Job Description) | 63-1 | 1485-1489 |
| Deposition of Ginine Trim | 64 | 1490-1645 *with emphasis on 1510-1521, 1541-1543, 1556, 1564-1566, 1582-1584* |

| | | |
|---|---|---|
| - Exhibit 53 (2018 Performance Evaluation) | 64-1 | 1647-1682 |
| - Exhibit 54 (Trim statement to EEOC) | 64-1 | 1683-1684 |
| - Exhibit 55 (EEOC Determination) | 64-1 | 1685-1686 |
| - Exhibit 56 (DYS Position Statement) | 64-1 | 1687-1692 |
| Gies Dep. Ex. 31 (Selection and Promotion of Personnel) | 69-1 | 2344-2347 |
| DYS Motion for Summary Judgment | 71 | 2349-2399 |
| Ames Opposition to Summary Judgment | 72 | 2485-2497 |
| 3/16/23 Opinion and Order re Motion for Summary Judgment | 79 | 2519-2543 |
| Notice of Appeal | 81 | 2545-2571 |
| Transcript - 2/28/23 Oral Argument | 84 | 2576-2601 |