# IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**Appeal from United States District Court, Southern District of Ohio, Eastern Division**

**Appellate Case No. 23-3341**
**Originating Case No. 2:20-cv-05935**

---

**MARLEAN AMES,**
*Plaintiff-Appellant,*
v.
**STATE OF OHIO, DEPARTMENT OF YOUTH SERVICES,**
*Defendant-Appellee.*

---

*ORAL ARGUMENT REQUESTED*

---

## REPLY OF PLAINTIFF-APPELLANT MARLEAN AMES

---

EDWARD L. GILBERT (0014544)
EDWARD L. GILBERT CO., L.P.A.
3070 W. Market Street, Suite 100
Akron, Ohio 44333
(330) 376-8855 Telephone
(330) 376-8857 Fax
egilbert@edwardlgilbert.com

*Counsel for Plaintiff-Appellant
Marlean Ames*

CATHLEEN BELLE CHRISSOS
SLATER (0066088)
DEVON J. ALEXANDER (0098814)
MEGAN ELIZABETH JEWETT
(0079534)
Ohio Attorney General's Office
Employment Law Section
30 East Broad Street, 16th Floor
Columbus, Ohio 443215
(614) 644-7257 Telephone
(614) 752-4677 Fax
ELSReview@OhioAGO.gov

*Counsel for Defendant-Appellee State of
Ohio, Department of Youth Services*

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................ii

TABLE OF AUTHORITIES .........................................................iii

ARGUMENT ............................................................................. 1

    A.  There Is Evidence that the Decisionmaker and the Favored Employee Were Members of the Same Minority Group ....................................... 1

    B.  There Is Sufficent Evidence Casting Doubt on DYS' Explanations for Its Decision to Demote Ames ............................................................ 4

       1.  DYS has changed its story ........................................................ 5

       2.  DYS' reasons don't fit the facts ................................................ 6

       3.  DYS' subjective criticisms are no match for Ames' objectively superior qualifications ........................................................... 8

       4.  DYS' irregular hiring practices are probative of discrimination .... 10

       5.  The probable cause determination is much more than meaningless "agency process" ................................................................. 11

CONCLUSION ..........................................................................12

CERTIFICATE OF SERVICE ....................................................14

CERTIFICATE OF COMPLIANCE.............................................15

ADDENDUM – DESIGNATION OF ORIGINATING COURT DOCUMENTS ......................................................................16

# TABLE OF AUTHORITIES

## Cases

*Arendale v. City of Memphis,* 519 F.3d 587 (6th Cir. 2009) ........................... 2

*Chen v. Dow Chemical Co.,* 580 F.3d 394 (6th Cir. 2009)............................ 4

*Jenkins v. Nashville Public Radio*, 106 Fed. Appx. 991 (6th Cir. 2004) ........ 4

*Levine v. DeJoy,* 64 F.4th 789 (6th Cir. 2023) ................................................. 9

*Morris v. Family Dollars Stores of Ohio, Inc.,* 320 Fed. Appx. 330 (6th Cir. 2009).............................................................................................. 2

*Zambetti v. Cuyahoga Community College,* 314 F.3d 249 (6th Cir. 2002)...... 2

## Rules

Fed. R. Civ. P. 56................................................................................. passim

Case: 23-3341   Document: 24   Filed: 09/14/2023   Page: 3

## **ARGUMENT**

Appellee State of Ohio, Department of Youth Services ("DYS") overlooks the golden rule of summary judgment – that the facts and all reasonable inferences must be drawn in favor of the non-movant, here Appellant Marlean Ames.

Shifting explanations. Tacit agreements. Contradicting testimony. Superior objective qualifications. Subjectively driven employment decisions. A minority manager who made decisions that benefited another member of the minority group. These are all indicators of discrimination, and they are all present in this case.

When the evidence is construed in the light most favorable to Ames, as is required by Fed. R. Civ. P. 56, a jury could very well reject DYS' explanation for its adverse employment actions and find that discrimination was at play - *just like a trained EEOC investigator did*. For these reasons, Ames requests that the Court reverse the District Court's judgment for DYS and remand the matter for a trial by jury on the sex discrimination claim and with instructions for the District Court to evaluate pretext on the (reverse) sexual orientation claim.

### A. There Is Evidence that the Decisionmaker and the Favored Employee Were Members of the Same Minority Group.

With respect to Ames' reverse discrimination claim, the issue on appeal is whether Ames offered evidence to show "background circumstances" manifesting

1

an intent to discriminate against the majority.[1]  DYS has argued and the District Court agreed that the reverse discrimination claim failed because Ames did not "provide the type of in-depth statistical analysis contemplated by 'background circumstances'."  (DYS Brief, Appellate Doc. 22-1, p. 39.)  **This is <u>not</u> the only standard**.  In *Morris v. Family Dollar Stores of Ohio, Inc.* -- a decision DYS did not address in its brief -- this Court held that "background circumstances" exist where there is evidence that the employer decision maker was a member of the same minority group as the favored employee. In other words, a "single factor" is enough.

> Following *Zambetti*'s reasoning that "the mere fact that an adverse employment decision was made by a member of a racial minority is sufficient to establish the first prong of the *prima facie* case," *Arendale v. City of Memphis*, 519 F.3d 587, 603 (6th Cir. 2008), [the employee] has provided the requisite background circumstances by showing that [the manager] is Hispanic and that he replaced [the employee] with an Hispanic employee.

*Morris,* 320 Fed. Appx. 330, 340 (6th Cir. 2009); *see also Zambetti v. Cuyahoga Community College*, 314 F.3d 249, 257 (6th Cir. 2002) (relying on the single factor that the police chief was African American and promoted an African American).

In this case, there is evidence that the decisionmaker and the favored employee were members of the same minority group, i.e., the LGBTIQ community.

---

[1] This case involves two instances of discrimination:  first, the failure to promote Ames to Bureau Chief, and second, the decision to revoke her position as PREAA and demote her.  The first claim involves allegations of sexual orientation discrimination as a gay woman (Yolonda Frierson) was selected for the promotion.  The second claim involves allegations of sexual orientation **and** sex discrimination as a gay male (Alex Stojsavljevic) replaced Ames.

2

Ginine Trim hired Frierson for the Bureau Chief position. In her statement to the EEOC, Trim admitted she was the person "authorized to fill a Bureau Chief position."[2] (Trim Dep. Ex. 54, R. 64-1, PageID# 1683; Trim Dep. 75, R.64, PageID# 1564.) As Trim and Frierson are both members of the LGBTIQ community, the fact that Trim selected Frierson satisfies the "background circumstance" requirement. Additionally, Ames provided evidence that following her demotion, DYS replaced her with another member of the LGBTIQ community (Stojsavljevic). Within the span of a single year, Ames fell victim to two adverse employment decisions that favored members of the LGBTIQ community.

DYS' claim that Assistant Director Julie Walburn and Director Ryan Gies, not Trim, were the decisionmakers is suspect, not only because it contradicts what DYS told the EEOC, but also because it contradicts the testimony of Frierson as it pertains to her promotion to Bureau Chief. While Walburn claims she interviewed Frierson for the position and then decided to promote her, (Walburn Dep. 28, R.60, PageID# 628), Frierson tells a different story. Frierson testified that she never interviewed for the position. (Frierson Dep. 83-84, R. 63, PageID# 1398-99.) Trim approached

---

[2] In another writing to the EEOC, DYS elaborated on the hiring process, explaining that Trim initially decided not to hire anyone, but in December 2019, Trim revisited the need for a Bureau Chief and placed Frierson in the position on a temporary basis, permanently promoting Frierson in January 2020. This is consistent with the testimony of Frierson, who stated Trim approached her in December 2019 and offered her the Bureau Chief job. (Frierson Dep. 74-76, R. 63, PageID# 1389-91.)

Frierson and said, "I would like for you to serve in the [Bureau Chief] position." (Frierson Dep. 76, R. 63, PageID# 1391.)  Frierson accepted the offer.

This conflicting evidence is more than sufficient to call DYS' claims and Walburn's testimony into question, and it presents a question of material fact that the jury, not the court, must resolve.  All things considered, there is sufficient evidence to support the suspicion that DYS is that unusual employer who discriminates against the majority.  Accordingly, the District Court erred in finding as a matter of law that Ames did not establish a *prima facie* case of reverse discrimination on account of her sexual orientation, and that decision should be reversed.

### B.    There Is Sufficient Evidence Casting Doubt on DYS' Explanations for Its Decision to Demote Ames.

With respect to Ames' sex discrimination claim arising from her demotion, the issue of pretext is at issue.  When deciding whether a plaintiff has demonstrated pretext at the summary judgment stage, the key inquiry is whether there is sufficient evidence from which a jury could reasonably doubt the employer's explanation for why it took adverse employment action.  *Chen v. Dow Chemical Co.*, 580 F.3d 394, 400 (6th Cir. 2009); *Jenkins v. Nashville Public Radio*, 106 Fed. Appx. 991, 993 (6th Cir. 2004) (pretext is established indirectly by showing the employer's explanation is not credible).  In this instance, there is more than enough evidence to cast doubt on DYS' reasons.  Indeed, the evidence does more than cast doubt on these reasons; in many instances, the evidence proves DYS' assertions false.

4

### 1.   *DYS has changed its story.*

A red flag for pretext is raised when an employer offers shifting explanations for its actions.  Predictably, DYS has argued that its reasons for demoting Ames have remained the same.  The facts, however, do not bear this out.  In response to the EEOC investigation, DYS said it demoted Ames because Ames was an unclassified employee.[3]  That reason is a far cry from the reasons DYS has advanced in this litigation, i.e., an inability to get along with others, not being proactive, and not fitting into some supposed "new direction."  (DYS Brief, Appellate Doc. 22-1, p. 48.)  Indeed, DYS went so far as to dig up age old complaints to justify its decision to demote Ames, ignoring the reality that these alleged complaints had not prevented Ames from receiving the PREAA position in the first place.  *See* Section B(2) *infra*.

It is also notable that DYS has identified Walburn, not Trim, as the decision maker.  Yet, throughout the EEOC investigation, Trim was the identified decision maker.  Trim provided the witness statement in response to the charge.  Other than when DYS restated the allegations from Ames' charge of discrimination, DYS did not mention Walburn's name in its position statement, no less take the position that

---

[3] DYS told the EEOC, DYS "exercised [its] respective rights, in accordance with the Ohio Revised Code and elected to revoke [Ames'] Unclassified appointment."  (Trim Dep. Ex. 56 – DYS Position Statement, R. 64-1, PageID# 1691.)  DYS did not mention bad performance, an inability to work with others, or a "new direction."  (*See id.*)

Walburn played any part in the adverse action against Ames. (*See* Trim Dep. Ex. 56 – DYS Position Statement, R. 64-1, PageID# 1687-92.)

It is the job of the jury, not the court, to evaluate these shifting reasons and determine whether to believe DYS (or not).

### 2. *DYS' reasons don't fit the facts.*

Many fact questions surround the truthfulness of DYS' reasons for demoting Ames. For instance, DYS claims that Ames was difficult to work with, but this claim is belied by Ames' performance evaluations – including the 2018 evaluation approved a few months before her demotion – which rated Ames as "exceeds expectations" with respect to customer focus. Comments praising Ames included: "Marlean is always willing to assist others when needed." Marlean "has frequent communication with county and private juvenile facilities … and in all cases she represents the agency professionally." "Marlean does well coordinating and working with her peers, as well as facility staff to accomplish outcomes." (Trim Dep. Ex. 53, R. 64-1, PageID# 1647-48; Trim Dep. 29-30, R. 64, PageID# 1518-19.) This hardly sounds like a person who is difficult to work with as DYS now insists was the case and a reason for her demotion.

Additionally, Gies testified that the alleged complaints, which were not documented or even discussed with Ames, were made **before** Ames was appointed PREAA in April 2014. (Gies Dep. 45-46, R. 69, PageID# 2112-13.) If these

6

complaints did not stand in the way of Ames' initial appointment to PREAA, it is hard to believe they were part of the reason for Ames' demotion five years later in 2019.

Also questionable is Walburn's testimony that she had ongoing concerns about Ames' performance as PREAA. Walburn approved Ames' positive performance evaluations, including most recently on January 2, 2019, when Trim acknowledged Ames' accomplishments with respect to sexual safety and expressed her plans to work with Ames over the upcoming year:

> **[I] look forward to watching [Marlean] grow and improve over the upcoming year. It is a pleasure having Marlean on my team. Marlean thank you for your dedication to ensuring sexual safety in our DYS facilities and CCF's.**

(Trim Dep. Ex. 53, R. 64-1, PageID# 1650, emphasis added; *see also* PageID# 1651, Walburn's approval of the evaluation on January 7, 2019.) Curiously, in a few short months, this opinion of Ames changed so substantially that a demotion was orchestrated.

Even more dubious is DYS' argument that its decision to demote Ames could not have been tainted with any discriminatory animus because neither Gies nor Walburn had anyone in mind to replace Ames when she was demoted. Gies' testimony tells a different story. Gies testified that he had been thinking about Stojsavljevic as Ames' replacement **before** he demoted Ames, but that he and Walburn decided not to approach Stojsavljevic until after they demoted Ames. (Gies

Dep. 73, 77, R. 69, PageID# 2140, 2144.) Tacit agreements like this are markers of discrimination, and are another reason why a jury, not the court, should weigh the evidence and evaluate whether Ames was a victim of discrimination.

### 3.    *DYS' subjective criticisms are no match for Ames' objectively superior qualifications.*

DYS does not deny that evidence that the adversely impacted employee was arguably better qualified for a position is suggestive of pretext and presents a question of fact for the jury.  DYS maintains, though, this principle does not apply here because Ames has offered nothing more than her own "own self-serving speculation" as to her abilities and qualifications.  There is nothing speculative in the fact that Ames' had thirty years of public service experience, five years of on-the-job work experience as PREAA, several college degrees, graduate coursework, PREA certification, and was the "go to" person for questions about the PREA program. (*See, e.g.,* Ames Dep. 20, 27, 30, 37-38, 74, R. 62, PageID# 997, 1004, 1007, 1014-15, 1051; Frierson Dep. 60, R. 63, PageID# 1375.)  Nor is there any speculation in the fact that Ames' supervisor (Trim) commended her on a job well done, thanked Ames for her dedication to ensuring sexual safety in DYS facilities, and looked forward to working with Ames in the upcoming year.  (Trim Dep. Ex. 53, R. 64-1, PageID# 1650.)

In contrast, as of May 2019 when DYS gave him the PREAA job, Stojsavljevic had worked for DYS for less than two years.  He held only an

undergraduate degree, had not pursued any masters coursework, and did not hold any PREA certifications. (Stojsavljevic Dep. 22-23, 32, R. 68, PageID# 1815-16, 1825-40.) It is also undisputed that Stojsavljevic, as PCM, was indirectly supervised by Ames, and he looked to Ames for instruction and assistance.[4] (Stojsavljevic Dep. 63, R. 68, PageID# 1856.) These objective facts show Ames to be the superior candidate.

Truth in point, it is DYS who relies on subjectivity and speculation to justify its actions. Reasons like "Ames was not the right fit for the new direction" or "Stojsavljevic was a better leader" are exactly the type of explanations that raise a suspicion of discrimination and are best suited for resolution by a jury. *See Levine v. DeJoy*, 64 F.4th 789, 802-03 (6th Cir. 2023). Ames' objectively superior qualifications are of sufficient significance to call DYS' subjective criticisms into question and allow a jury to conclude that DYS demoted Ames and replaced her with a gay male because of her sex.

---

[4] Ames was objectively better qualified than Frierson for the Bureau Chief position too. Unlike Frierson, Ames possessed the required undergraduate education and had more experience with DYS. The District Court did not consider the issue of pretext, having erred in its conclusion that Ames did not establish "background circumstances" for her *prima facie* reverse sexual orientation claim.

#### 4.    *DYS' irregular hiring practices are probative of discrimination.*

DYS likewise does not dispute that evidence of irregularities in the application and selection process are probative of discrimination. DYS claims no irregularity with respect to the promotion of Stojsavljevic because the PREAA is an unclassified position, which follows an unstructured hiring process.   This argument misses the mark on several fronts.   First, it ignores DYS "Selection and Promotion of Personnel" policy, which provides that it is the "policy of [DYS] to standardize the processing of the applicant selection process" for **all** "persons employed by [DYS]." (Gies Dep. Ex. 31, R. 69-1, PageID# 2344-45; Gies Dep. 113, R. 69, PageID# 2180.) Under this policy, the applicant selection process *must be the same for all DYS employees*, which in the case of Ames, was not.

Second, the issue is not whether DYS was legally required to post positions and conduct interviews for unclassified positions.  The issue is *how* DYS has handled hiring decisions for unclassified positions in the past.  With respect to the PREAA position, DYS' past practice was to solicit applications and conduct interviews. That is what DYS did when it promoted Ames to PREAA;[5] but that is not what DYS did

---

[5] Astonishingly, DYS claims it did not interview Ames for the PREAA position even though Ames testified that she did interview: "I interviewed and they gave the job to somebody else who a couple months later they removed because he couldn't perform the duties."  (Ames Dep. 87, R. 62, PageID# 1064.)

when it promoted Stojsavljevic to the same position. DYS did not even require Stojsavljevic to possess the necessary job qualifications.

This pattern of flouting policy and past practices is repeated with respect to Frierson's promotion to Bureau Chief. DYS solicited applications and conducted interviews, chose not to hire anyone who applied, and then gave the job to Frierson even though she had not applied for it. And while DYS takes issue with the criticisms of Frierson and her lack of qualifications, the record speaks for itself. Frierson did not possess an undergraduate degree. Frierson overstated her education *multiple times* on applications for DYS, and she never bothered to correct her misrepresentations. (*See* Frierson Dep. 80-82, R. 63, PageID# 1395-97.) None of this mattered. Frierson still received a promotion she never requested.

Despite these irregularities, DYS' insists the only conclusion to be drawn is that discrimination did not factor into the adverse decisions taken against Ames. Combined with the other probative evidence of discrimination discussed herein, reasonable minds could certainly disagree.

### 5. *The probable cause determination is much more than meaningless "agency process."*

DYS urges the Court to ignore the EEOC probable cause determination, (*see* Complaint - Ex. 1, R. 1-1, PageID# 13-14), proclaiming the determination letter as nothing more than "a recitation of Ames' allegations and agency process for conciliation." (DYS Brief, Appellate Doc. 22-1, p. 62.) Other than its own self-

11

serving proclamation that the investigation was somehow inadequate, DYS offers no reason for the court to ignore the product of factfinding by a trained EEOC investigator. To disregard an EEOC determination, without any finding of a reason to question the reliability or expertise of the investigative agency, cannot be reconciled with the trust Congress placed in the EEOC to investigate charges of discrimination. Absent issues of trustworthiness, which DYS has not asserted, no less offered evidence to prove, the probable cause determination is another piece of evidence that raises an issue of material fact and renders summary judgment improper.

## **CONCLUSION**

When viewing the facts and their reasonable inferences in the light most favorable to Ames, the Court cannot rule out the possibility that a reasonable jury could conclude that DYS is the unusual employer who discriminates against the majority and that impermissible factors motivated DYS' decision to demote Ames from PREAA.

WHEREFORE, Plaintiff-Appellant Marlean Ames respectfully submits the District Court erred in granting DYS summary judgment and that the District Court's decision should be reversed.

Respectfully submitted,

EDWARD L. GILBERT CO., L.P.A.

*/s/ Edward L. Gilbert*
Edward L. Gilbert (0014544)
3070 W. Market Street, Suite 100
Akron, Ohio 44333
(330) 376-8855 Telephone
(330) 376-8857 Fax
egilbert@edwardlgilbert.com

*Counsel for Plaintiff-Appellant Marlean Ames*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this __ day of September 2023, the foregoing *Reply of Plaintiff-Appellant Marlean Ames* was electronically filed with the Court and will be accessible to all parties through the Court's electronic filing system.

*/s/ Edward L. Gilbert*
Edward L. Gilbert (0014544)
EDWARD L. GILBERT CO., L.P.A.
*Counsel for Plaintiff-Appellant Marlean Ames*

# CERTIFICATE OF COMPLIANCE

I certify that this Reply complies with the word-count provision set forth in the Federal Rule of Appellate Procedures 38(a)(10) and 32(g)(2).  This Reply is printed using Times New Roman 14-point typeface using Microsoft word processing software and contains 2,911 words.

*/s/Edward L. Gilbert*
Edward L. Gilbert (0014544)
EDWARD L. GILBERT CO., L.P.A.
*Counsel for Plaintiff-Appellant Marlean Ames*

**ADDENDUM-**
**DESIGNATION OF RELEVANT ORIGINATING COURT DOCUMENTS**

Plaintiff-Appellant, pursuant to Sixth Circuit Rule 30(b), designates the following filings in the District Court's electronic record as relevant to this appeal. Filings referenced in the Reply are **Bold.**

| Description of Document | Docket Entry | PageID Range |
|---|---|---|
| Complaint | 1 | 1-12 |
| **- Exhibit 1 – EEOC Determination** | **1-1** | **13-14** |
| - Exhibit 3 – Right to Sue | 1-3 | 16-18 |
| First Amended Complaint | 28 | 196-207 |
| 3/29/22 Opinion and Order re Motion for Judgment on the Pleadings | 50 | 295-308 |
| **Deposition of Ryan Gies** *Amended Document filed as R.69* | **59/69** | 321-453/2068-2200 *with emphasis on 353-366, 379-380, 390, 393, 397, 428, 433, 2100-2111, **2112-2113**, 2125-2127, 2137, **2140, 2144, 2180*** |
| **Deposition of Julie Walburn** | **60** | **628** |
| **Deposition of Alexander Stojsavljevic** *Amended Document filed as R.68* | **61/68** | 703-810/1794-1901 *with emphasis on 724-725, 734-749, 765, **1815-1816, 1825-1840, 1856*** |
| **Deposition of Marlean Ames** | **62** | 977-1250 *with emphasis on **997, 1004, 1007, 1014-1015, 1051, 1064*** |

| | | |
|---|---|---|
| - Exhibit 6 (Position Description) | 62-1 | 1259 |
| - Exhibit 14 (Interrogatory Answers) | 62-1 | 1286-1304 |
| **Deposition of Yolonda Frierson** | **63** | 1316-1458<br>*with emphasis on 1375-1377, **1389-1391-1399,** 1412* |
| - Exhibit 51 (Bureau Chief Job Description) | 63-1 | 1485-1489 |
| **Deposition of Ginine Trim** | **64** | 1490-1645<br>*with emphasis on **1518-1519, 1564*** |
| **- Exhibit 53 (2018 Performance Evaluation)** | **64-1** | **1647-1682** |
| **- Exhibit 54 (Trim statement to EEOC)** | **64-1** | **1683-1684** |
| - Exhibit 55 (EEOC Determination) | 64-1 | 1685-1686 |
| **- Exhibit 56 (DYS Position Statement)** | **64-1** | **1687-1692** |
| Deposition of Alexander Stojsavljevic (Amended), *Original filed as R. 68* | 61/68 | *See R. 61, supra* |
| Deposition of Ryan Gies (Amended), *Original filed as R. 59* | 59/69 | *See R. 59, supra* |
| **- Exhibit 31 (Selection and Promotion of Personnel)** | **69-1** | **2344-2347** |
| DYS Motion for Summary Judgment | 71 | 2349-2399 |

| | | |
|---|---|---|
| Ames Opposition to Summary Judgment | 72 | 2485-2497 |
| 3/16/23 Opinion and Order re Motion for Summary Judgment | 79 | 2519-2543 |
| Notice of Appeal | 81 | 2545-2571 |
| Transcript - 2/28/23 Oral Argument | 84 | 2576-2601 |